UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BUTLER,<br><br>        Petitioner,<br><br>    v.<br><br>DANIEL PARAMO,<br><br>        Respondent. | No. 2:13-cv-2561 KJM CKD P<br><br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a California prisoner proceeding pro se with a petition for writ of habeas corpus under 28 U.S.C. § 2254. He was convicted by a jury in Sacramento County of four counts of possession of a firearm by a felon, and one count each of transporting a controlled substance, attempting to evade a peace officer, driving or taking another person's vehicle without consent, and receiving stolen property. He is serving an aggregate sentence of 20 years and four months imprisonment.[1]

I. Background

On appeal, the California Court of Appeal, Third Appellate District, summarized the facts presented at trial as follows:

---

[1] Petitioner was originally ordered to serve an aggregate sentence of 23 years imprisonment. His sentence was ordered reduced by the California Court of Appeal on direct appeal. Resp't's Lodged Doc. No. 19 at 1.

1

On August 20, 2007, D.W. was on vacation in Georgia when he received a telephone call from a neighbor informing him that someone had broken into his home. D.W. returned home and found the front door open and several items missing including a red Ford Mustang convertible, a Harley Davidson motorcycle, three handguns, a sword, knives, jewelry, silver dollars, two car radios and hair cutting equipment.

In the early morning hours of August 22, 2007, Deputy John Van Assen was on duty in a marked patrol car parked at the corner of Oak Avenue and Santa Juanita in Sacramento County. At approximately 1:25 a.m., he observed a red Ford Mustang convertible go through an intersection without stopping at a posted stop sign. There were two people in the car, one in the driver's seat and the other in the front passenger seat.

Van Assen pulled out, activated the lights on his patrol car and followed the Mustang. When the Mustang failed to pull over and instead sped away, Van Assen activated his siren and engaged in a high speed pursuit. Eventually, the Mustang turned onto a dirt road and traveled another 75 feet before hitting a tree. Van Assen followed onto the dirt road. Before the Mustang hit the tree, the driver jumped out, looked back at the patrol car for a couple of seconds, and then fled on foot. Van Assen identified defendant in court as that driver.

The passenger in the Mustang, Nicholas Dunbar, remained in the vehicle. Van Assen arrested Dunbar, placed him in the back of the patrol car, and waited for backup. After Sergeant Eric Buehler and a canine unit arrived on the scene, Buehler assumed custody of Dunbar and Van Assen assisted in searching for defendant.

While Van Assen was away, Buehler found a cell phone on the front seat of the Mustang and began calling numbers from the list of contacts in the phone. When Buehler informed the people he called who he was and what he was doing, they all hung up except Joseph V., who was identified on the phone as Uncle Joe and is the defendant's Uncle. Joseph informed Buehler that defendant had been living with defendant's mother for approximately a year and that his date of birth is April 20. Joseph thought defendant had been born in 1974.

Buehler searched a police database using the computer in his patrol car and found an entry for defendant, who had previously been convicted of numerous crimes. Defendant's birth date was listed as August 20, 1970. Buehler pulled up a booking photograph of defendant on the screen of his computer.

Van Assen and the other officers were unable to find defendant in the search of the area. When Van Assen returned to his patrol car, Buehler showed him the photo of defendant on his computer screen. Van Assen immediately identified defendant as the driver of the Mustang.

/////

2

While Van Assen was searching for defendant, Buehler saw Dunbar in the back seat of Van Assen's patrol car moving around a lot and walked over to investigate. Buehler noticed a white granular substance on the floorboard below Dunbar's knee. It appeared to Buehler that Dunbar had been trying to destroy the substance, so he removed Dunbar from the patrol car and placed him in another. After returning from the search, Van Assen collected the substance from the floor of his patrol car and it tested positive for methamphetamine. However, later testing of the substance was inconclusive for the presence of methamphetamine.

A search of the Mustang turned up various items taken from D.W.'s home including the sword, three handguns, radios and knives. They also found bolt cutters, a duffel bag containing a baggie of methamphetamine, smoking paraphernalia, and a fourth handgun, which was loaded.

Dunbar was interviewed at the scene and claimed not to know the driver of the Mustang. According to Dunbar, he knew the driver only as "Tom." However, at trial, Dunbar claimed he told the officers the driver's name was "John." He denied that defendant had been the driver.

Defendant was arrested on September 12, 2007. Later that day, Van Assen was working at the jail and saw defendant being booked. He immediately recognized defendant as the driver of the Mustang on August 22.

Defendant's mother, J.S., was called to testify at trial. In a taped jail conversation, defendant had asked J.S. to tell his attorney that he had been with her the night of August 22. She refused. J.S. testified that her brother, Joseph, had called that evening to tell her about the call he received from Sergeant Buehler. According to J.S., defendant arrived home some time after that call from her brother.

Defendant presented an alibi defense. M.M. testified that she had a blind date on the evening of August 21, 2007, but was "stood up." She and a friend, T.W., remained at a bar until 1:00 or 1:30 a.m. on August 22, and then walked to the trailer of T.W.'s friend, A.L. Sr. While there, they met A.L. Sr.'s son, A.L. Jr., and his friend, "Tommy," who M.M. identified in court as defendant. M.M. testified defendant was working on his truck and remained with them until 2:30 or 3:00 a.m., at which time he left with a tow truck driver.

A.L. Jr. also testified about that evening. According to A.L. Jr., defendant was working on his truck at the trailer until approximately 1:45 or 2:00 a.m. the evening of August 22 or 23. A.L. Jr. testified M.M. showed up that evening around midnight but stayed only for a minute.

Defendant testified on his own behalf. Defendant vaguely remembered meeting M.M. but could not recall when. He admitted the cell phone found in the Mustang belonged to him but claimed

3

> he had lost track of it sometime in August 2007 and ended up replacing it five or seven days later. Defendant testified that, in the jail conversation with his mother, he was not trying to convince her to lie for him but was trying to determine where he had been on August 22. Defendant denied driving the Mustang on August 22.

ECF No. 9 at 16-18.

All of the claims presented in this action were presented by petitioner on direct review.

II. <u>Standard For Habeas Corpus Relief</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)." It is the habeas petitioner's burden to show he is not precluded from obtaining relief by § 2254(d). See <u>Woodford v. Visciotti</u>, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different. As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams</u> [<u>v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law

4

1  set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply

2  fails to cite or fails to indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2002).

3  　　　　The court will look to the last reasoned state court decision in determining whether the

4  law applied to a particular claim by the state courts was contrary to the law set forth in the cases

5  of the United States Supreme Court or whether an unreasonable application of such law has

6  occurred.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

7  　　　　When a state court rejects a federal claim without addressing the claim, a federal court

8  presumes the claim was adjudicated on the merits, in which case § 2254(d) deference is

9  applicable.  Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013).  This presumption can be

10  rebutted.  Id.

11  　　　　It is appropriate to look to lower federal court decisions to determine what law has been

12  "clearly established" by the Supreme Court and the reasonableness of a particular application of

13  that law.  "Clearly established" federal law is that determined by the Supreme Court.  Arredondo

14  v. Ortiz, 365 F.3d 778, 782-83 (9th Cir. 2004).  At the same time, it is appropriate to look to

15  lower federal court decisions as persuasive authority in determining what law has been "clearly

16  established" and the reasonableness of a particular application of that law.  Duhaime v.

17  Ducharme, 200 F.3d 597, 598 (9th Cir. 1999); Clark v. Murphy, 331 F.3d 1062 (9th Cir. 2003),

18  overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63 (2003); cf. Arredondo, 365 F.3d at

19  782-83 (noting that reliance on Ninth Circuit or other authority outside bounds of Supreme Court

20  precedent is misplaced).

21  III.  Petitioner's Claims And Analysis

22  　　　　A.  Deputy Van Assen's Identification

23  　　　　Petitioner's first claim is that his right to a fair trial guaranteed by the Due Process Clause

24  of the Fourteenth Amendment was violated when the prosecution was permitted to present into

25  evidence that Deputy John Van Assen identified petitioner as the person he witnessed driving the

26  stolen red Ford Mustang convertible on August 22, 2007.  Petitioner asserts Van Assen's

27  identification was "impermissibly suggestive since [he] had been shown photograph images of

28  only [petitioner]."  ECF No. 1 at 40.

On direct appeal, the California Court of Appeal addressed this claim as follows:

> Defendant contends that the trial court erred in admitting into evidence the pretrial and trial identifications of him by Deputy Van Assen. Defendant argues the pretrial identification was unfairly tainted by the fact that Van Assen was shown a photograph of him alone rather than the typical six-pack of photos. He further argues this impermissible pretrial identification unfairly tainted any subsequent identification.
>
> "In order to determine whether the admission of identification evidence violates a defendant's right to due process of law, we consider (1) whether the identification procedure was unduly suggestive and unnecessary, and, if so, (2) whether the identification itself was nevertheless reliable under the totality of the circumstances, taking into account such factors as the opportunity of the witness to view the suspect at the time of the offense, the accuracy of his or her prior description of the suspect, the level of certainty demonstrated at the time of the identification, and the lapse of time between the offense and the identification." (People v. Cunningham (2001) 25 Cal.4th 926, 989.) "The defendant bears the burden of demonstrating the existence of an unreliable identification procedure." (Ibid.) "[T[here must be a 'substantial likelihood of irreparable misidentification' under the ' " 'totality of the circumstances' " ' to warrant reversal of a conviction on this ground." (Id. at p. 990.)
>
> A " 'single person showup' is not inherently unfair." (People v. Floyd (1970) 1 Cal.3d 694, 714, disapproved on other grounds in People v. Wheeler (1978) 22 Cal.3d 258, 287, fn. 36.) "[F]or a witness identification procedure to violate the due process clauses, the state must, at the threshold, improperly suggest something to the witness—i.e., it must, wittingly or unwittingly, initiate an unduly suggestive procedure…. 'A procedure is unfair which suggests in advance of identification by the witness the identity of the person suspected by the police.' " (People v. Ochoa (1998) 19 Cal.4th 353, 413.)
>
> In the present matter, much was made by the prosecution of the fact that Sergeant Buehler said nothing to Deputy Van Assen about how he was able to secure defendant's photograph before showing it to Van Assen. However, it could not have been lost on Van Assen that Buehler did not simply pick this photograph at random. When he viewed the photo, Van Assen must certainly have suspected Buehler had traced the photo using evidence found at the scene. Hence, Van Assen would have known there was other evidence linking the man depicted in the photo to the crime.
>
> Of course, the trial court explained in admitting the evidence, the same observation of defendant's photograph could have been made by Van Assen if it had been him, rather than Buehler, who had discovered the cell phone in his routine investigation, traced its ownership, and then searched the offender database. Likewise, if Van Assen had discovered defendant during his search of the area and recognized him as the driver, this would be equivalent to a

6

> single person show—up.
>
> At any rate, defendant failed to establish the identification was unreliable under the totality of the circumstances. The evidence established that Van Assen had a good look at defendant from a distance of approximately 37 feet when defendant jumped out of the Mustang and looked back at him. The area was lit by lights on the patrol car, and Van Assen saw defendant for two or three seconds before defendant fled. Van Assen's description of the suspect before observing defendant's picture was fairly general, initially describing him as a white male adult wearing a black shirt and blue jeans. He later described the suspect as a white male adult, five feet, eight inches, to six feet tall, 160 pounds, with brown hair wearing blue jeans and a black shirt, possibly a "Raiders" shirt. We have nothing in the record before us to indicate whether these descriptions were accurate. Finally, the identification came only hours after Van Assen saw the defendant flee and Van Assen immediately and without hesitation identified defendant as the driver. Under the totality of the circumstances, we conclude the court did not err in admitting the identification evidence.

ECF No. 9 at 18-19.

The California Court of Appeal was the last court to issue a reasoned decision with respect to petitioner's claim.

Petitioner is precluded from obtaining relief by 28 U.S.C. § 2254(d). First, the California Court of Appeal correctly identified the law as set forth by the Supreme Court of the United States pertaining to allegedly unduly suggestive identification procedures. See Perry v. New Hampshire, 132 S. Ct. 716, 724-725 (2012). Further, the Court of Appeal's decision does not involve an unreasonable application of that law, nor an unreasonable determination of the facts. For these reasons, petitioner's first claim must be rejected.

B. Sufficiency of the Evidence, Count 1

In count one, petitioner was charged with, and later convicted of, illegally transporting a controlled substance. Petitioner asserts there was not sufficient evidence presented at trial to sustain this conviction. Specifically, petitioner asserts:

> Based on the evidence, it is more likely that the only baggie with methamphetamine was found in the patrol car with Dunbar, and was his, and not in the trunk of the Mustang [petitioner] drove. Van Assen, the officer who seized both baggies, was confused from the time of the seizure to the time of trial as to where each baggie was found. During trial, he admitted to another officer that he did not know where the baggies were found.

7

ECF No. 1 at 51.

On direct appeal, the California Court of Appeal addressed this claim as follows:

> Defendant was convicted of one count of transporting a controlled substance (Health & Saf.Code, § 11379, subd. (a)). The evidence showed there were in fact two quantities of suspected drugs: 1.83 grams found in a plastic baggie in a duffel bag in the trunk of the Mustang, and (2) 1.34 grams collected from the floor of Deputy Van Assen's patrol car. The substance from the trunk, identified at trial as MH-8, was ultimately determined to contain methamphetamine. However, testing on the substance from the floor of the patrol car, identified as MH—7, was inconclusive.
>
> Defendant contends the drug conviction is not supported by substantial evidence, because the officers who handled the drugs were confused as to which item, MH—7 or MH—8, was found in the trunk. Only one contained methamphetamine, and defendant argues the evidence is uncertain as to whether that was the substance found in the trunk of the Mustang or the substance taken from the patrol car, which had apparently been in the possession of Dunbar.
>
> The People respond that it does not matter which substance contained methamphetamine, because defendant was in constructive possession of both substances prior to fleeing on foot from the Mustang. One substance was found in the trunk of the Mustang, which was in defendant's possession and control. The other substance was in the possession of Dunbar who testified he hid it in his underwear after Van Assen began chasing them. The People argue it may be inferred defendant was aware of the presence of this other substance in the possession of Dunbar, and defendant had constructive control over it as well.
>
> The offense of possession of a controlled substance requires physical or constructive possession, knowledge of possession, and knowledge of the narcotic character of the substance. (People v. Johnson (1984) 158 Cal.App.3d 850, 853.) "Constructive possession 'occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another.' " (Id. at p. 854.)
>
> We need not decide whether defendant had constructive possession of both quantities of suspected methamphetamine. In support of his contention that the evidence failed to establish which substance contained methamphetamine, defendant asserts Deputy Van Assen "was confused from the time of seizure to the time of trial as to where each baggie was found." According to defendant, Van Assen admitted to another officer during trial "that he did not know where the baggies were found." However, the only evidence defendant cites in support of these assertions is a portion of the testimony of Sergeant Buehler, where he said nothing about Deputy

8

Van Assen. In fact, Van Assen testified repeatedly that MH—7 was the substance taken from the floor of the patrol car and MH—8, which contained the methamphetamine, was the substance taken from the trunk of the Mustang.

Defendant asserts that while the officers identified MH—8 as the substance taken from the trunk and MH—7 as the substance taken from the floor of the patrol car, "[a]t trial, MH—7 matched the description of the item Van Assen described as MH—8," whereas, MH—8 "had a piece of plastic and some other impurity mixed in with it." Defendant points to the testimony of Sergeant Buehler, who first saw the substance on the floor of the patrol car. Buehler testified MH—8 "is more consistent" with what he saw on the floorboard. He indicated MH—8 contains a piece of plastic not normally seen in a baggie of drugs and appears to be something picked up from the floor of the car. He further testified the substance in MH—8 appeared smashed up.

This is a slim reed on which to base a claim of error. While Sergeant Buehler may have believed MH—8 *appeared* more consistent with what he saw in the patrol car, he based this belief solely on the presence of impurities in the substance and the fact it appeared to have been smashed. However, Buehler acknowledged he did not observe the substance from the floor of the patrol car being collected. He also acknowledged the other substance, MH—7, could have been smashed and, of the two substances, MH—7 appeared to be in smaller particles. Furthermore, Van Assen testified that when he collected the substance from the floor of the patrol car, he made sure no impurities got in with it. Thus, according to Van Assen, the item with the impurities was that taken from the trunk of the Mustang.

On a claim of insufficient evidence, we review "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of sold value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (People v. Johnson (1980) 26 Cal.3d 557, 578.) " 'The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt.' " (*Id.* at p.576, quoting from People v. Reilly (1970) 3 Cal.3d 421, 425.) " ' " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' " (People v. Valdez (2004) 32 Cal.4th 73, 104.)

Based on the totality of the evidence presented at trial, substantial evidence supports defendant's conviction for possession of a controlled substance. Any confusion in the evidence as to which substance was taken from the trunk of the Mustang was for the jury to sort out.

////

The California Court of Appeal was the last court to issue a reasoned decision with respect to petitioner's claim.

When determining whether the evidence presented at trial is sufficient under the Constitution to support any criminal conviction, a court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The Court of Appeal gave petitioner at least the protection provided in Jackson analyzing petitioner's sufficiency of the evidence claims. Therefore, the court cannot find that the Court of Appeal decision is contrary to clearly established federal law as determined by the Supreme Court of the United States. Furthermore, petitioner fails to point to anything suggesting the Court of Appeal applied Supreme Court precedent unreasonably. Finally, after reviewing the relevant parts of the record, the court finds that the Court of Appeal's decision rejecting petitioner's sufficiency of the evidence claim as to count one is not based upon an unreasonable determination of the facts.

For all the foregoing reasons, petitioner's second claim should be rejected.

C. Sufficiency of the Evidence, Counts 1 and 5 through 8

Petitioner's final claim concerns the items found in the trunk of the stolen Mustang including the methamphetamine described above and four guns. Petitioner asserts there was no evidence presented indicating petitioner was aware of the contents of the trunk. The Court of Appeal addressed this claim as follows:

> Defendant contends his conviction on the drug offense and each of the firearm offenses must be reversed because there is insufficient evidence he was aware of the presence of these items in the trunk of the Mustang. According to defendant, there was nothing in the trunk, such as fingerprints or identifying documents, tying him to the contents. Defendant further argues that while it may be inferred he knew of the items in the trunk, it may also be inferred he did not and was "simply out joyriding in a convertible car he knew was of questionable origin."
>
> Defendant does not contest that he had constructive possession of the items found in the trunk of the Mustang. He contends instead there is no evidence he had knowledge of their presence.
>
> The People respond that defendant's fleeing from the pursuing

> officer "constitutes an implied admission from which the jury could find his consciousness of guilt." Moreover, the People argue defendant's jailhouse conversations with his mother and girlfriend reveal an attempt to create a false alibi and suppress evidence, further demonstrating a consciousness of guilt. Thus, according to the People, "[s]ufficient circumstantial evidence existed from which the jury could infer that [defendant] possessed the firearms and had knowledge of their presence."
>
> The People's consciousness of guilt arguments establish nothing more than defendant was aware he was in possession of contraband. However, it is undisputed defendant was aware he was driving a stolen vehicle and there were other items of stolen property in the passenger compartment of the Mustang. Thus, his flight does not prove he was aware of the additional contraband inside the trunk.
>
> Nevertheless, where defendant was in knowing possession of a stolen vehicle in which other items of stolen property were located in the passenger compartment, a reasonable jury could infer defendant was aware of additional stolen property form the same robbery, as well as other items, in the trunk of the vehicle. Defendant's alternate theory that the jury could infer he was simply out joyriding in a convertible of questionable origin is not reasonable under the circumstances.
>
> We conclude substantial evidence supports defendant's conviction on the controlled substance and firearm offenses.

ECF No. 9 at 21.

The California Court of Appeal was the last court to issue a reasoned decision with respect to petitioner's claim. As with petitioner's insufficiency of evidence claim presented in claim 2, the California Court of Appeal's decision concerning the issues presented in claim 3 is not contrary too, nor does petitioner show that it involves an unreasonable application of Supreme Court authority. Furthermore, the Court of Appeal did not unreasonably construe the facts. For these reasons petitioner is again precluded from obtaining relief by 28 U.S.C. § 2254(d).

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for a writ of habeas corpus be denied; and

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 29, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

butl2561.157